## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
### _____ DIVISION

## QUESTIONNAIRE FOR PRISONERS PROCEEDING
## PRO SE UNDER 42 U.S.C.§ 1983

_William H. Powell_

_____

_____

_____

(GIVE FULL NAME AND PRISON NUMBER OF EACH PLAINTIFF)

**Plaintiff(s)**

VS.

_Comissioner Brian Owens, Worden_
_Gregory McLaughlin, Deputy Warden_
_James Hinton, Deputy Warden Moody_
_Captain Davis and (see attached)_

(NAME OF EACH DEFENDANT)

**Defendant(s)**

**CIVIL ACTION NO:** 5 : 14-cv-087

## I. GENERAL INFORMATION

1. Your full name _and_ prison number(s): _William H. Powell  890711_

2. Name and location of prison where you are _now_ confined : _Ware state Prison 3620 Harris Road  Waycross Georgia  31503_

3. Sentence you are now serving (how long?): _2 Life Sentences_

    (a) What were you convicted of? _Murder_

    (b) Name and location of court which imposed sentence: _Wayne County Courthouse_

    (c) When was sentence imposed? _March 12, 2009_

    (d) Did you appeal your sentence and/or conviction?   ☑ Yes        ☐ No

    (e) What was the result of your appeal? _Pending_

    (f) Approximate date your sentence will be completed: _N/A_

## II. PREVIOUS LAWSUITS

4. Other than the appeal of your conviction or sentence, have you ever submitted a lawsuit for filing in any federal or state court dealing with the SAME FACTS involved in this lawsuit or otherwise related to your imprisonment?   ☑ Yes   ☐ No

5. If your answer to question 4 is "Yes," list that lawsuit below, giving the following information:

(IF YOU HAVE FILED MORE THAN ONE LAWSUIT, LIST OTHER LAWSUITS ON A SEPARATE SHEET OF PAPER, GIVING THE SAME INFORMATION FOR EACH.)

(a) Parties to the previous lawsuit:

Plaintiff(s): _William Powell_

Defendant(s): _Glen County Detention Center_

(b) Name of Court: _Brunswick District Court Soutern Division_

(c) Docket Number: _Don't remember_   When did you file this lawsuit? _2008 or 2009_

(d) Name of judge assigned to case: _Judge Graham, Lisa Godfrey Woods_

(e) Is this case still pending?   ☐ Yes   ☑ No

(f) If your answer to (e) is "No," when was it disposed of and what were the results?
(DID YOU WIN? WAS THE CASE DISMISSED? DID YOU APPEAL?) _Case was Dismissed without prejudice_

## III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. Where are you now confined? _Ware state Prison, Waycross Georgia_

(a) How long have you been at this institution? _8 months_

(b) Does this institution have a grievance procedure?   ☑ Yes   ☐ No

(c) If your answer to question 6(b) is "Yes," answer the following:

(1) Did you present your complaint(s) herein to the institution as a grievance?
☑ Yes   ☐ No

(2) What was the result? _See attached_

(d) If your answer to question 6(b) is "No," explain why not: _N/A_

(e)  What, if anything, have you done to bring your complaint(s) to the attention of prison officials? Give dates and places and the names of persons talked to: *See attached*

_____

_____

7.  In what other institutions have you been confined?  Give dates of entry and exit.

Hancock state Prison 2009-2010 months unknown. Telfair
state Prison 2010 Months unknow, Macon state Prison 2011-Month
Unknown - Nov 2012, Smith state Prison Nov 2012-May 2013.
Ware state Prison May 2013-Present

## VI.  PARTIES TO THIS LAWSUIT

8.  List the name and address of each plaintiff in this lawsuit.

~~[struck out]~~  William H. Powell. Ware state
Prison - 3620 Harris Road Waycross Georgia 31503

_____

_____

_____

9.  List the full name, the official position, and the place of employment of each defendant in this lawsuit.
(ATTACH ADDITIONAL PAGES IF NECESSARY)

See attached

_____

_____

_____

_____

## V.  STATEMENT OF CLAIM

10.  In the space hereafter provided, and on separate sheets of paper, if necessary, set forth your claims and contentions against the defendant(s) you have named herein.  Tell the court WHAT you contend happened to you, WHEN the incident(s) you complain about occurred, WHERE the incident(s) took place, HOW your constitutional rights were violated, and WHO violated them.  Describe how each defendant was involved, including the names of other persons who were also involved.  If you have more than one claim, number and set forth each claim SEPARATELY.

Do not give any legal argument or cite any cases or statutes at this time; if such is needed at a later time, the court will advise you of this and will afford you sufficient time to make such arguments.  KEEP IN MIND THAT RULE 8 OF THE *FEDERAL RULES OF CIVIL PROCEDURE* REQUIRES THAT PLEADINGS BE SIMPLE, CONCISE, AND DIRECT.  If the court needs additional information from you, you will be notified.

11. List the name and address of every person you believe was a witness to the incident(s) you complain about, BRIEFLY stating what you believe each person knows from having seen or heard what happened.
(USE ADDITIONAL SHEETS, IF NECESSARY)

Eric Haynes (Ware state Prison) Donald Baker (address unknown.)
Kenneth Watkins (Ware state Prison) James Marino (Ware
State Prison) Daniel Brittain (Ware state Prison) Herbert
Smalls (Ware state Prison) Cornelius Jackson (address unknown)
william Lemmons (Ware state Prison), Jonah Sanders (Ware state Prison)
(Will serve with additional declarations)

12. BRIEFLY state exactly what you want the court to do for you. That is, what kind of relief are you seeking in this lawsuit? Do not make any legal arguments and do not cite any cases or statutes.
(USE ADDITIONAL SHEETS, IF NECESSARY)

See attached.

13. You may attach additional pages if you wish to make any legal argument. However, legal arguments are NOT required in order for you to obtain relief under §1983. If the court desires legal argument from you, it will request it. If any defendant presents a legal argument, you will be afforded an opportunity to respond thereto.

14. KEEP IN MIND THAT ONCE YOUR LAWSUIT IS FILED, THE COURT WILL REQUIRE YOU TO DILIGENTLY PROSECUTE IT. That means you will be required to go forward with your case without delay. Thus, if you fail to adequately prepare your case before you file it, you may find your lawsuit dismissed for failure to prosecute if you take no action once it is filed. YOU WILL RECEIVE NO FURTHER INSTRUCTIONS FROM THE COURT TELLING YOU WHAT TO DO OR HOW TO DO IT. IT IS YOUR RESPONSIBILITY AND YOURS ALONE TO PROSECUTE YOUR OWN CASE. If you fail to prosecute your case, it will be dismissed under Rule 41 of the *Federal Rules of Civil Procedure.*

Signed this 24 day of February , 20 14 .

William H. Powell

*(Signature of Plaintiff)*

## STATEMENT OF CLAIM (Continued)

Where did the incident you are complaining about occur?   That is, at what institution or institutions?

Macon state Prison, Smith state Prison, Ware state Prison

When do you allege this incident took place? Feb 29th 2012 and ongoing

What happened? Warden McLaughlen, Warden Hinton, Captain Davis, Warden Moody and leutenant Eudie were aware of a dangerous environment prior to Plaintiffs incarceration and assault at Macon state Prison and failed to act to improve the environment wich resulted in the assault upon said Plaintiff.

There were more than seventy assaults with weapons prior to plaintiffs assault. There was inadequate supervision. Gaurds were aiding and abeting in numerous assaults by opening doors for congregatting inmates and turning a blind eye to assaults.

Weapons were fabricated by inmates from metal locker Boxes and non-accounted for razor blades. All the afore mentioned were aware of this and failed to take reasonable measures to provide a safer environment.

Warden McLaughlen, warden Hinton and Warden Moody were Made aware of Plaintiffs inadequate medical treatment following his assault through grievances and letters, and failed to act appropriately to improve Plaintiffs medical treatment.

Comissioner owens and warden McLaughlen were aware of under staffing that propigated an unsafe environment by allowing one staff member to monitor ninety six inmates.

See attached for additional information

In The United States District Court
For The Middle District of Georgia
Macon Division

William H. Powell
    Plaintiff

    V.                                    5:14-CV-087

Brian Owens, Gregory McLaughlin,
James Hinton, Ms. Moody, Captain Davis,
T. Bobbitt, John Doe #1 Floor officer Blk Male,
John Doe #2 Control officer White Male, Lt. Eaddie,
Lt. Rawls, Officer Robinson (cert), Counselor Bostic,
John Hill, Ms. Cook, Georgia Health Science
University, - Nurse Worthy, Colette Nash, C. Fye,
Harrison, Ms. Spikes, Unknown subcontractor
At Smith State Prison, Cooper-PA, Unknown Medical
Administrator At Smith State Prison, Unknown Me-
dical Subcontractor At Ware State Prison, Nurse
Sick-Call Jane Doe #1, Jane Doe #2, Unknown Med-
ical Administrator At Ware State Prison, Unknown
opthalmologist At Macon State Prison, Unknown
opthalmologist At Smith State Prison, Counselor
Cook Smith State Prison, First Name Unknown,
And subcontractor For The opthalmologist,

## COMPLAINT WITH JURY DEMAND INTRODUCTION.

This is a civil rights action filed by William H. Powell, a state prisoner, for damages and injunctive relief under 42 U.S.C. § 1983, alleging deliberate indifference, failure to protect, denial of medical care, reckless disregard, failure to train, Aide & Abetting, in violation of the eigth Amendment to the United States Constitution, Denial of the grievance process in violation of the First Amendment to the Constitution, Aiding and abeding a WANTON MALICIOUS VIOLENT ASSAULT IN VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENT.

## JURISDICTION

1. THE COURT HAS JURISDICTION OVER THE PLAINTIFF'S CLAIMS OF VIOLATION OF THE FEDERAL CONSTITUTIONAL RIGHTS UNDER 42 USC §§ 1331(c) and 1343.

2. PLAINTIFF SEEKS DECLARATORY RELIEF PURSUANT TO 28 USC SECTION 2201 and 2202.

3. THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF GEORGIA MACON DIVISION, IS AN APPROPRIATE VENUE UNDER 28 USC SECTION 1391(b) BECAUSE IT IS WHERE THE INITIAL EVENT GIVING RISE TO THIS CLAIM OCCURRED.

## PARTIES

4. THE PLAINTIFF WILLIAM H. POWELL, WAS INCARCERATED AT MACON STATE PRISON, and SMITH STATE PRISON, as WELL WARE STATE PRISON, ALL LOCATED IN THE STATE OF GEORGIA, DURING THE EVENTS DESCRIBED IN THIS COMPLAINT.

5. DEFENDANTS, JOHN DOE #1 A BLACK MALE WHO WAS A CORRECTIONAL OFFICERS EMPLOYED AT MACON STATE ALONG WITH JOHN DOE #2 A WHITE

MALE EMPLOYED AT MACON STATE AS A CORRECTIONAL OFFICER. BOTH NAMES ARE PRESENTLY UNKNOWN TO THE PLAINTIFF. THEY ARE SUED IN THEIR INDIVIDUAL CAPACITIES.

6. DEFENDANT PETER EADDIE IS A CORRECTIONAL LIEUTENANT IN CHARGE OF SUPERVISING THE CORRECTIONAL STAFF AT THE TIME OF THE INCIDENT. HE IS SUED IN HIS INDIVIDUAL CAPACITY.

7. DEFENDANT LIEUTENANT RAWLS WAS A CORRECTIONAL LIEUTENANT IN CHARGE OF ADMINISTRATION SEGREGATION AT MACON STATE PRISON. HE IS BEING SUED IN HIS INDIVIDUAL CAPACITY.

8. DEFENDANT JAMES HINTON WAS THE DEPUTY WARDEN FOR SECURITY AT MACON STATE PRISON AND IS IN CHARGE OF SUPERVISION AND DISCIPLINE OF ALL CORRECTIONAL STAFF AT MACON STATE. HE IS SUED IN HIS INDIVIDUAL CAPACITY.

9. DEFENDANT MISS SPIKES WAS THE MEDICAL ADMINISTRATOR AT MACON STATE PRISON AND IS GENERALLY RESPONSIBLE FOR ENSURING PROVISION OF MEDICAL CARE TO PRISONERS AND SPECIFICALLY FOR SCHEDULING MEDICAL APPOINTMENTS OUTSIDE THE PRISON WHEN A PRISONER NEEDS SPECIALIZED TREATMENT OR EVALUATION. SHE IS BEING SUED IN HER INDIVIDUAL AND OFFICIAL CAPACITY.

10. DEFENDANT DEPUTY WARDEN - MOODY WAS THE DEPUTY WARDEN IN CHARGE OF CARE AND TREATMENT OF THE INMATES, AND THE REVIEW OF MEDICAL GRIEVANCES AT MACON STATE. SHE IS SUED IN HER INDIVIDUAL AND OFFICIAL CAPACITIES.

11. DEFENDANT GREGORY MCLAUGHLIN IS/WAS THE WARDEN AT MACON STATE AND IS RESPONSIBLE FOR MAINTAINING A SAFE ENVIRONMENT, ENFORCING THE STANDARD OPERATION PROCEDURES, MONITORING HIS SUBORDINATES, REVIEWING ALL APPEALS FOR GRIEVANCES FILED BY INMATES AT MACON. HE IS BEING SUED IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES.

12. DEFENDANT CAPTAIN DAVIS WAS A CORRECTIONAL CAPTAIN IN CHARGE OF SECURITY AND OVERSEES THE ENTIRE CORRECTIONAL STAFF AT MACON STATE. HE IS SUED IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES.

13. DEFENDANT UNIT MANAGER BOBBIT IS/WAS A UNIT MANAGER AT MACON STATE THAT WAS IN CHARGE OF SECURITY OF THE BUILDING AT THE TIME THAT SAID INCIDENT OCCURRED. HE IS SUED IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES.

14. DEFENDANT BRIAN OWENS IS THE COMMISSIONER RESPONSIBLE FOR THE OVERALL OPERATION OF THE DEPARTMENT OF CORRECTION AND EACH INSTITUTION UNDER ITS JURISDICTION INCLUDING MACON STATE. HE IS SUED IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES.

15. DEFENDANT GEORGIA HEALTH SCIENCE UNIVERSITY LOCATED IN AUGUSTA, GEORGIA. AT THIS TIME MENTIONED AT THIS COMPLAINT WAS CONTRACTED TO PROVIDE MEDICAL SERVICES AT MACON STATE PRISON. IT IS SUED IN ITS INDIVIDUAL AND OFFICIAL CAPACITIES.

16. DEFENDANT DR. FYE, CHIQUITA A PHYSICIAN, A PHYSICIAN ASSISTANT C. NASH AN NURSE HARRIS/HARRISON AND NURSE WORTHY, ALSO THE SICK-CALL NURSE AT MACON STATE PRISON AT THE TIME, NAME UNKNOWN, AND, THE MEDICAL ADMINISTRATOR MS. SPIKE. THEY ARE SUED IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES.

17. DEFENDANTS JOHN HILL A CHIEF COUNSELOR AT TIME OF INCIDENT, STEPHEN BOSTIC A COUNSELOR FOR PLAINTIFF AT TIME OF INCIDENT, BOTH WHO AT ALL TIMES MENTIONED IN THIS COMPLAINT WHERE COUNSELORS AT MACON STATE PRISON. THEY ARE SUED IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES.

18. DEFENDANTS COUNSELOR COOK A CHIEF COUNSELOR AT SMITH STATE PRISON, AND COUNSELOR PETRIE CHIEF-ACTING COUNSELOR WHO AT ALL TIMES MENTIONED IN THIS COMPLAINT HELD THE TITLES MENTIONED.

19. DEFENDANT PHYSICIAN ASSISTANT COOPER AT SMITH STATE PRISON AND MEDICAL ADMINISTRATOR NAME UNKNOWN AT SMITH STATE PRISON.

20. DEFENDANT'S NURSE JANE DOE #1 INITIALS M.B. SICK-CALL NURSE, NURSE JANE DOE #2 FIRST NAME LULY AN-RN, AND MEDICAL ADMINISTRATOR AT WARE STATE PRISON, AS WELL AS THE SUBCONTRACTOR AT WARE STATE, AND SUBCONTRACTOR FOR SMITH STATE PRISON, WHICH IS UNKNOWN. THEIR SUED IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES.

20. A DEFENDANT OPHTHALMOLOGIST, AT MACON STATE PRISON, AND SMITH STATE, AND THE SUBCONTRACTOR, BOTH NAMES ARE UNKNOWN TO PLAINTIFF. HE IS BEING SUED IN HIS OFFICIAL AND INDIVIDUAL CAPACITY.

ALL THE DEFENDANTS HAVE ACTED AND CONTINUE TO ACT UNDER COLOR OF STATE LAW AT ALL TIMES RELATIVE TO THIS COMPLAINT.

## FACTS:

21. ON FEBRUARY 29, 2012 AT OR AROUND 1410 HOURS PLAINTIFF WAS LOCKED/CONFINED TO HIS GENERAL POPULATION CELL AT MACON STATE IN HIS CELL ALONG WITH CELL MATE.

22. PLAINTIFF CELL-DOOR WAS LOCKED AND THE ONLY WAY IT COULD BE OPENED IS BY A KEY, FROM THE CONTROL TOWER OR FROM THE INSIDE.

23. PLAINTIFF CELL-DOOR WAS OPENED BY JOHN DOE #2 IN THE CONTROL TOWER (WITH ELECTRONIC SWITCH).

24. SIX (6) TO EIGHT (8) INMATES ARMED WITH SHARP OBJECTS IE (HOMEMADE SHANKS, AND RAZORS) ENTERED PLAINTIFF CELL ROOM 115 E-1.

25. THE SIX TO EIGHT INMATES STARTED TAKING THINGS FROM THE PLAINTIFF CELL MATE LOCKER.

26. THE 6 TO 8 INMATES (intruders) THREATEN TO DO BODILY HARM TO THE PLAINTIFF IF HE DID NOT GIVE THEM MONEY.

27. THE INTRUDERS ATTEMPTED TO EXTORT MONEY FROM THE PLAINTIFF BY HAVING HIM CALL HOME AND ASK FOR MONEY.

28. THE INTRUDERS INFORMED THE PLAINTIFF THAT HE WOULD BE HELD HOSTAGE UNTIL MONEY WAS PRODUCED.

29. ONE OF THE INTRUDERS LEFT THE PLAINTIFF CELL AND RETURNED FIVE MINUTES LATER WITH ANOTHER INMATE.

30. THE INTRUDERS WERE IN PLAINTIFF ASSIGNED CELL FOR APPROXIMATELY TEN ADDITIONAL MINUTES UNTIL THE PLAINTIFF INFORMED THE INTRUDERS THAT HE DID NOT HAVE ANY MONEY.

31. THE INTRUDERS TOLD THE PLAINTIFF TO PACK HIS BELONGINGS AND LEAVE THE DORM.

32. WHILE PLAINTIFF WAS PACKING HIS PROPERTY THE INTRUDERS ATTACKED HIM AND STARTED STABBING AND CUTTING THE PLAINTIFF WITH SAID SHARP OBJECTS < RAZORS, HOMEMADE SHANKS >.

33. PLAINTIFF YELLED FOR HELP AND GOT NO RESPONSE.

34. THE STABBING LASTED APPROXIMATELY < 2 > TWO MINUTES.

35. PLAINTIFF WAS STABBED AND CUT ON THE RIGHT SIDE OF HIS FACE, ON THE LEFT SIDE OF HIS TEMPLE, ON HIS LEFT SHOULDER BLADE, ON HIS LEFT COLLAR BONE NEAR HIS THROAT, SEVEN OR EIGHT TIMES ON HIS BACK, HIS CHEST, AND SEVERAL TIMES IN HIS HEAD.

36. PLAINTIFF EVENTUALLY FOUGT HIS WAY OUT OF HIS CELL AND WAS STABBED ONE ADDITIONAL TIME OUTSIDE HIS CELL.

37. ONCE OUTSIDE OF HIS CELL THE PLAINTIFF OBSERVED OFFICER JOHN DOE #1 BLACK MALE (FLOOR OFFICER) STANDING APPROXIMATELY 30 FEET FROM THE RECREATION YARD.

38. AT THIS TIME JOHN DOE #1 YELLED OUT "HOW DID YOU ALL GET IN THAT CELL".

39. PLAINTIFF MADE HIS WAY TO THE FRONT DOOR OF THE SALLY-PORT.

40. CONTROL TOWER BANGED ON SALLY-PORT WINDOW STATING "

TO PLAINTIFF HE WAS SORRY

41. MEDICAL HELP ARRIVED IN SECONDS.

42. "UPON INFORMATION AND BELIEF" PRIOR TO ASSAULT FLOOR OFFICER JOHN DOE #1 LEFT HIS POST UN-ATTENDED, AND RETURNED MINUTES AFTER THE LAST INTRUDER ENTERED PLAINTIFF CELL.

43. DURING THE ASSAULT AND DURING STANDARD OPERATION DEPENDANTS JOHN DOE #1 AND JOHN DOE #2 ARE IN CHARGE OF OPERATING THE CONTROL TOWER, MONITERING IN-HOUSE RECORDING, SUPERVISING INMATES INSIDE THE DORM, AND SUPERVISING INMATES OUTSIDE ON THE RECREATION YARD, AND OPENING THE KEY GATE IN FRONT OF BUILDING TO ALLOW INMATES TO GO THEIR JOBS, EDUCATION, MEDICAL, ETC.

## DENIAL OF MEDICAL CARE

44. Following THE ASSAULT PLAINTIFF WAS TRANSPORTED TO THE MEDICAL AT MACON STATE.

45. THE MEDICAL STAFF DETERMINED AT MACON STATE THAT THEY WERE UNABLE TO TREAT PLAINTIFF WOUNDS.

46. PLAINTIFF WAS TRANSFERED TOO FLINT RIVER HOSPITAL.

47. THE MEDICAL ATTENDANTS AT FLINT RIVER HOSPITAL WERE UN-ABLE TO PROPERLY TREAT PLAINTIFF WOUNDS.

48. SUBSEQUENTLY PLAINTIFF WAS TRANSPORTED TOO MACON HOSPITAL.

49. PLAINTIFF WOUNDS WERE TREATED AT MACON HOSPITAL.

50. FOLLOWING TREATMENT PLAINTIFF WAS RETURNED WITHIN HOURS TO MACON STATE WITH ORDERS WRITTEN BY MACON MEDICAL STAFF FOR FOLLOW-UP TREATMENT IN (7) SEVEN DAYS.

51. PLAINTIFF RETURNED 3 A.M. THE NEXT DAY, THAT SAME DAY MARCH 1, 2012 THE PLAINTIFF WAS BROUGHT BEFORE DEFENDANT NASH PHYSICIAN AS-SITANCE

52. DEFENDANT NASH REVIEWED THE STANDING MEDICAL ORDER WRITTEN BY MACON MEDICAL STAFF FOR FOLLOW-UP TREATMENT IN (7) SEVEN DAYS, AND GAUZE EXCHANGE, AND FOLLOW-UP FOR EVALUATION OF SUTURES, STAPLES DRESSING ETC.

53. FOLLOWING DEFENDANT NASH'S REVIEW OF THE STANDING ORDER, NASH EXAMINED THE PLAINTIFFS WOUND REPAIRS.

54. DEFENDANT NASH STATED THAT THE REPAIRS WERE DONE IMPROPERLY.

55. DEFENDANT NASH PROCEEDED TO REMOVE SUTURES FROM THE CHEST WOUND, AND STAPLES FROM OTHER WOUNDS.

56. FOLLOWING REMOVAL OF SAID SUTURES AND STAPLES, DEFENDANT NASH ASKED DEFENDANT WORTHY TO GET HER SOME 4.0 SUTURES.

57. DEFENDANT STATED TO DEFENDANT NASH THERE WERE NO SUTURES IN STORAGE.

58. DEFENDANT WORTHY WAS THEN INSTRUCTED BY DEFENDANT NASH TO GET SOME 6.0 DENTAL SUTURES.

59. DEFENDANT RETURNED WITH 10.0 DENTAL SUTURES STATING THAT THERE WAS NO 6.0 SUTURES.

60. DEFENDANT NASH REPAIRED THE WOUNDS THAT HAD BEEN STITCHED AND STAPLED WITH 10.0 SUTURES, WITHOUT SCRUBBING OR RESANITIZING THE WOUND.

61. PLAINTIFF COMPLAINED IMMEDIATELY THAT THE SUTURES WERE VERY IRRITATING WERE THE INTERNAL AND EXTERNAL SUTURES WERE REPLACED.

62. ON 3-5-2012, PLAINTIFF FILLED OUT A SICK-CALL REQUESTING TO BE EVALUATED BY THE MEDICAL STAFF AT MACON STATE PRISON, STATING THAT HE WAS HAVING EXCRUCIATING PAIN FROM HIS CHEST WOUND ALONG WITH A LARGE AMOUNT OF DRAINAGE.

63. ON 3-6-2012, PLAINTIFF WAS SEEN BY NURSE HARRISON/HARRIS DEFENDANT AND MEDICAL PHYSICIAN WILLIS.

64. DEFENDANT HARRIS AND DR. WILLIS EVALUATED PLAINTIFFS WOUNDS AFTER RETURNING PLAINTIFF SICK-CALL REQUEST BACK TO PLAINTIFF AND TELLING HIM THAT THE MEDICAL WAS COMING TO CHECK ON HIM ANYHOW.

65. A LARGE AMOUNT OF GREEN/YELLOW EXUDATE WAS COMING FROM THE WOUND ON PLAINTIFF CHEST.

66. DR. WILLIS PERSCRIBED ANTIBIOTICS FOR THE PLAINTIFF, DEFENDANT C. FYE ALSO SIGNED OFF ON THE ANTIBIOTICS.

67. PLAINTIFF REQUESTED A DRESSING EXCHANGE TO NURSE DEFENDANT HARRIS/HARRISON, NURSE HARRIS/HARRISON TOLD THE PLAINTIFF THAT SHE WOULD RETURN TO CHANGE THE DRESSING.

68. DRESSING WAS NOT CHANGED DURING THE VISIT WITH NURSE HARRIS/HARRISON AND DR. WILLIS. NO-ONE RETURNED AS ASSURED, TO CHANGE PLAINTIFF GAUZE.

69. ON 3-7-2012, PLAINTIFF SUBMITTED ANOTHER SICK-CALL COMPLAINING OF MASSIVE CHEST PAIN.

70. ON 3-8-2012, PLAINTIFF WAS SEEN BY DEFENDANT NASH.

71. DEFENDANT REMOVED THE SUTURES FROM PLAINTIFF BACK WOUNDS,

72. DEFENDANT NASH CHANGED THE CHEST WOUND DRESSING THAT WAS CONTINUING TO DRAIN LARGE AMOUNTS OF GREEN/YELLOW EXUDATE.

73. DEFENDANT NASH TOLD NURSE FRASIER TO OBTAIN A WOUND CULTURE FROM PLAINTIFFS CHEST WOUND AND STATED THAT SHE WOULD INFORM THE SICK-CALL NURSE TO PLACE THE PLAINTIFF ON DAILY DRESSING EXCHANGES AFTER PLAINTIFF COMPLAINED OF MASSIVE DRAINAGE AND NO GAUZE TO COVER IT UP WITH.

74. PLAINTIFF WAS NEVER PLACED ON DRESSING CHANGE. HE NEVER RECEIVE ANY GAUZE.

75. ON 3-13-12 PLAINTIFF WAS TAKEN TO MEDICAL AT MACON STATE PRISON BY DEFENDANT LT. RAWLS AND SGT. MCKENZIE TO HAVE SUTURES REMOVED

FROM HIS FACE

76. AT MEDICAL ON 3-13-2012, NURSE FRASIER TOLD PLAINTIFF THAT SHE COULD NOT REMOVE THE SUTURES FROM THE CHEST WOUND BECAUSE IT WAS STILL OOZING GREEN / YELLOW EXUDATE.

77. PLAINTIFF COMPLAINED OF MASSIVE CHEST PAIN NURSE FRASIER WHO NOTIFIED DEFENDANT NASH.

78. DEFENDANT NASH CAME INTO THE TREATMENT ROOM AND INSTRUCTED NURSE FRASIER TO GET ANOTHER CULTURE WHICH FRASIER DID.

79. DEFENDANT NASH STATED THAT SHE COULD AND WOULD NOT GIVE MR. POWELL PLAINTIFF ANYTHING FOR PAIN.

80. PLAINTIFF ASKED DEFENDANT NASH FOR ADDITIONAL GAUZE FOR DRESSING CHANGES. DEFENDANT NASH SAID SHE WOULD PROVIDE, BUT NEVER DID.

81. ON 3-15-2012, PLAINTIFF WAS TAKEN TO MEDICAL AT MACON STATE.

82. DEFENDANT LT. RAWLS; SGT. McKENZIE, DEFENDANT NASH, DEFENDANT FYE, DEFENDANT HARRIS/HARRISON, NURSE MILLER ALL WERE PRESENT AT MEDICAL AND OBSERVED DEFENDANT NASH DO WOUND CARE ON PLAINTIFF.

83. DEFENDANT NASH REMOVED THE SUTURES FROM PLAINTIFF CHEST WOUND AND PACKED THE CHEST WOUND WITH WET GAUZE.

84. DEFENDANT NASH AGAIN SAID THAT SHE WOULD PLACE PLAINTIFF ON DAILY GAUZE DRESSING CHANGE.

85. ON 3-16-2012, WAS AN SHOWER DAY IN THE SEGREGATION UNIT BEFORE PLAINTIFF WENT TO THE SHOWER PLAINTIFF ASKED FLOOR OFFICER NAME UNKNOWN TO CALL MEDICAL DEPARTMENT FOR WOUND CARE OR AT LEAST WOUND CARE SUPPLIES. OFFICER LAST NAME INITIALS STARTED WITH AN "L".

86. DEFENDANT WORTHY CAME TO PLAINTIFF CELL DOOR J1 108.

87. DEFENDANT NURSE WORTHY STATED THAT SHE DID NOT SEE ANYTHING INDICATING THAT PLAINTIFF WAS ON DAILY DRESSING CHANGES, BUT WOULD RETURN BUT WOULD RETURN WITH GAUZE IF PLAINTIFF NEED SOME.

88. DEFENDANT NURSE WORTHY NEVER RETURNED WITH ANY SUPPLIES.

89. PLAINTIFF WAS FORCED TO USE WET TISSUE TO PLUG HIS DRAINING WOUND.

90. ON 4-6-2012, PLAINTIFF FILLED OUT A SICK-CALL COMPLAINING ABOUT HIS CHEST PAIN WITH NO RESPONSE.

91. ON 5-7-2012, PLAINTIFF FILLED OUT ANOTHER SICK-CALL COMPLAINING ABOUT HIS CHEST WOUND WITH NO RESPONSE.

92. ON THE MONTH OF MAY 2012, PLAINTIFF FILLED OUT ANOTHER SICK-CALL COMPLAINING ABOUT HIS RIGHT SIDE HURTING.

93. PLAINTIFF WAS SEEN BY DR. WILLIS WHO ORDERED BLOOD-WORK TO SEE IF PLAINTIFF HAD ANY LIVER PROBLEMS.

94. IN THE MONTH OF MAY 2012, PLAINTIFF WAS INFORMED IN FRONT OF CORRECTIONAL OFFICERS, MCKENZIE-SGT AND LT. RAWLS, BY NURSE HARRISON/HARRIS AND DR. WILLIS THAT HE HAD CONTRACTED HEPATITIS "B".

95. ON 6-30-2012, PLAINTIFF SUBMITTED ANOTHER SICK-CALL COMPLAINING OF CONTINUED CHEST PAIN AND TO HAVE HIS WOUNDS EVALUATED.

96. ON 7-1-2012, PLAINTIFF RECEIVED A RESPONSE VIA INSTITUTION MAIL STATING THAT PLAINTIFF WAS SCHEDULED FOR EVALUATION FROM R.N. INITIALS LAST NAME "S" NIGHT SHIFT R.N. NAME UNKNOWN.

97. PLAINTIFF WAS NOT EVALUATED.

98. IN THE MONTH OF JULY 2012, PLAINTIFF FILED A GRIEVANCE REGARDING HIS CONTINOUS CHEST PAIN AND MEDICAL DENYING TO SEE HIM.

99. SEVERAL WEEKS LATER THE GRIEVANCE WAS DENIED BY DEPENDANT SPIKES STATING THAT PLAINTIFF WAS TREATED PROPERLY.

100. AN APPEAL WAS SUBMITTED SEVERAL DAYS LATER, LATER IT WAS DENIED AGAIN.

101. ANOTHER GRIEVANCE WAS FILED NOV 7, 2012, REGARDING THE SAME CHEST PAINS.

102. THE GRIEVANCE WAS DENIED AGAIN AND PLAINTIFF WAS NEVER EVALUATED AGAIN.

103. AN APPEAL WAS FILED TIMELY FOR THIS DENIAL OF ADEQUATE MEDICAL CARE AND WAS DENIED AGAIN.

104. PLAINTIFF SENT LETTERS TOO DEFENDANT MCLAUGHLIN, DEFENDANT HINTON, AND DEFENDANT MOODY, AS WELL AS MEDICAL ADMINISTRATOR SPIKES, REGARDING DENIAL OF ADEQUATE HEALTH CARE AND SAFETY AT MACON STATE PRISON.

105. NO RESPONSE WAS EVER RECEIVED REGARDING THESE LETTERS.

106. IN NOVEMBER 2012 PLAINTIFF WAS TRANSFERRED TOO SMITH STATE PRISON LOCATED IN GLENNVILLE, GA.

107. AT SMITH STATE PRISON NOVEMBER 2012, PLAINTIFF FILLED OUT A SICK-CALL REQUEST FORM REGARDING HIS CONTINUED CHEST PAIN.

108. ON NOVEMBER 14, 2012, PLAINTIFF WAS SEEN BY DEFENDANT P.A. COOPER AT SMITH STATE PRISON.

109. DEFENDANT PA COOPER DID NOT EVALUATE PLAINTIFF CHEST AND STATED THAT SHE WAS ADVISED BY NOTE, THAT PLAINTIFF CHEST WAS FINE.

110. ON JUNE 2013 PLAINTIFF WAS TRANSFERRED TO WAKE STATE PRISON.

111. IN AUGUST OR SEPTEMBER 2013 PLAINTIFF FILLED OUT A SICK-CALL REQUEST REGARDING HIS CONTINUED CHEST PAIN.

112. PLAINTIFF WAS EVALUATED BY DEFENDANT SICK-CALL NURSE INITIALS M.B. NAME UNKNOWN NURSE JANE DOE #1.

113. DEFENDANT JANE DOE #1 STATED PLAINTIFF HAD KELOIDS AND THAT THERE WAS NOTHING THAT COULD BE DONE TO HELP THE PAIN AND SCARRINGS AND THAT SHE WAS SORRY, BUT THAT WAS MEDICAL POLICY AND PLAINTIFF WOULD HAVE TO SUFFER UNTIL RELEASED.

114. ON NOVEMBER 18, 2013, PLAINTIFF AGAIN FILLED OUT A SICK-CALL COMPLAINING OF THE CONTINOUS CHEST PAIN.

115. ON DECEMBER 6, 2013 PLAINTIFF WAS SEEN AT MEDICAL AT WARE STATE PRISON BY DEFENDANT JANE DOE #2 INITIALS L.B. NAME UNKNOWN R.N.

116. ON DECEMBER 2, PLAINTIFF SUBMITTED ANOTHER SICK-CALL COMPLAINING OF THE CONTINUED CHEST PAIN.

117. DEFENDANT JANE DOE #2 SAID PLAINTIFF HAD KELOIDS AND THERE WAS THAT COULD BE DONE AND SHE COULD NOT GIVE ANYTHING FOR PAIN PER MEDICAL POLICY.

118. ON THE THIRD WEEK OF SEPT 2012, PLAINTIFF FILLED OUT ANOTHER MEDICAL REQUEST FORM COMPLAINING OF MASSIVE PAIN IN HIS RIGHT GREAT TOE AND WAS CONCERN BECAUSE OF HIM BEING DIAZBETIC.

119. ON OCTOBER 10, 2012, PLAINTIFF FILED A GRIEVANCE TO COUNSELOR THOMAS REGARDING HIM NOT BEING SEEN FOR HIS TOE PAIN.

120. ON OCTOBER 18, 2012, PLAINTIFF WAS CALLED OUT TO MEDICAL HE WAS SEEN BY DR. PYE -DEPENDANT, SHE TOLD PLAINTIFF THAT SINCE HE LIKE COMPLAINING - IN ADDRESS TO HIS GRIEVANCE- SHE HAD A POLICY THAT SHE WOULD NOT TREAT HIS TOE-NAIL WHILE HE WAS IN THE HOLE.

121. THERE WERE NO TOENAIL CLIPPERS ON COMMISSARY. SO THE ONLY WAY TO GET PLAINTIFFS TOE TREATED WOULD BE BY MEDICAL.

122. ON NOVEMBER 13, 2012, PLAINTIFF WAS SEEN FOR HIS CHEST AS PREVIOUSLY ENUMERATED AND TOENAIL WAS SAW. PLAINTIFF COMPLAINED OF BOTH ISSUES THROUGH MEDICAL SICK-CALL, BY PA COOPER.

123. P.A. COOPER -DEFENDANT, GAVE PLAINTIFF IBUPROFEN FOR HIS TOE PAIN AND SCHEDULED HIM TO GET HIS INGROWN TOE NAIL REMOVED THE FOLLOWING WEEK.

124. PLAINTIFF WAS EXCRUCIATING PAIN AND SEVERAL DAYS LATER REMOVED THE TOE NAIL HIMSELF, WITH MUCH DIFFICULTIE WITH TOE-NAIL CLIPPERS AT SMITH STATE.

## EYES

125. APPROXIMATELY TWO MONTHS AFTER THE ASSAULT PLAINTIFF STARTED HAVING TROUBLE WITH HIS VISION.

126. PLAINTIFF SUBMITTED A SICK-CALL REGARDING HIS VISION, AND WAS SUBSEQUENTLY SEEN BY THE EYE DOCTOR AT MACON STATE PRISON - DEFENDANT NAME UNKNOWN.

127. THE MACON STATE PRISON EYE DOCTOR TOLD PLAINTIFF THAT HE HAD DEVELOPED KERATOCONUS FROM TRAUMA MAYBE, THAT HIS RIGHT EYE WAS ALREADY TOO DAMAGED TO TREAT (NOTING THE LARGE LACERATION SCAR FROM HIS ATTACK IS RIGHT NEXT TO HIS RIGHT EYE) BY THE OPTIC NERVE.

(FROM THE ATTACK.) BUT HE COULD ORDER A CONTACT FOR THE LEFT EYE TO SLOW THE PROGRESSION OF THE DEGENERATION AND WOULD HAVE HIM SEEN BY A SPECIALIST.

128. SEVERAL DAYS LATER PLAINTIFF RECEIVED HIS CONTACT FOR HIS LEFT EYE.

129. PLAINTIFF WAS WEARING HIS CONTACT AS ORDERED, BUT THREE DAYS LATER HIS CONTACT FELL-OUT AND HE COULD NOT FIND IT WITH HIS IMPAIRED VISION.

130. PLAINTIFF FILLED OUT A REQUEST TO BE SEEN BY THE EYE DOCTOR AND TO RECEIVE ANOTHER CONTACT, AND PLACED IT IN THE RIGHT (BOX).

131. PLAINTIFF WAS EVENTUALLY SEEN SEVERAL WEEKS LATER, THE EYE DOCTOR - DEPENDANT - NAME UNKNOWN - AT MACON STATE TOLD HIM THAT HE WOULD REQUEST FOR ANOTHER CONTACT BUT THERE WAS NO GUARANTEE THAT (DOC) WOULD APPROVE IT, AND HE HOPE HE COULD ANOTHER ONE, AND HE TOLD ME TO BE CAREFUL.

132. AT END OF NOVEMBER OR BEGINNING DECEMBER 2012, PLAINTIFF WAS TAKEN TO AUGUSTA MEDICAL PRISON FOR EVALUATION.

133. AT AUGUSTA PLAINTIFF WAS TOLD THAT HE NEEDED AN CORNEAL TRANSPL-ANT TO REPAIR HIS EYE SIGHT, AND HE WOULD NEED AN OUTSIDE SPECIALIST FOR THAT TYPE OF SURGERY, NO SURGEON COULD DO IT AT AUGUSTA, AND PLAINTIFF DEFINITELY NEEDS THE CONTACT FOR HIS LEFT EYE TO SLOW THE DEGENERATI-NG PROCESS, AND HE WOULD ORDER HIM ONE. AND HE NEEDED TO BE IN A NON-VIOLENT ENVIRONMENT. TO NOT FIGHT.

134. PLAINTIFF NEVER RECEIVED SAID CONTACT.

135. SEVERAL DAYS LATER OR WEEKS, FOLLOWING THE AUGUSTA APPOINTMENT PLAI-NTIFF WAS TAKEN TO DUBLIN, GEORGIA AND SEEN BY DR. JOHN G. WILLIAMS WHO CONFIRMED HIS DIAGNOSIS OF (KERATOCONUS).

135. DR. WILLIAMS STATED THAT HE WOULD SCHEDULE PLAINTIFF FOR A FO-LLOW-UP, THEN AN CORNEAL TRANSPLANT, AND DR. WILLIAMS ADVISED MR. POW-ELL HE NEEDED A CONTACT FOR HIS LEFT "EYE" AND TO PREVENT FROM TRAU-MA, OR FIGHTS, BECAUSE HE COULD LOSE HIS VISION.

137. PLAINTIFF PLACED HIS SELF IN ISOLATION DUE TO THE DR. NAME UNKNOWN. AUGUSTA STATE PRISON, EXPLAINING HE SHOULD BE IN A HANDICAP NON-VIOLENT ENVIRONMENT.

138. PLAINTIFF PLACED HIMSELF IN PROTECTIVE CUSTODY DUE TO THE VIOLENT ENVIRONMENT HE WAS PLACED IN. HIS CELL BLOCK G-2, WAS ONE OF THE MOST VIOLENT AT SMITH STATE PRISON. PLAINTIFF WAS IN FEAR OF LOSING THE REST OF HIS SIGHT.

139. SEVERAL DAYS LATER AFTER BEING IN ISOLATION SEGREGATION DEFENDANT OFFICER BACON C.O.II TOLD PLAINTIFF THAT HE WAS TO MOVE TO F BUILDING ANOTHER VIOLENT BUILDING IN WHICH AN INMATE WAS BRUTALLY MURDERED SEVERAL MONTHS LATER.

140. PLAINTIFF TOLD DEFENDANT BACON THAT HE HAD AN EYE DISEASE THAT REQUIRED A PROTECTED ENVIRONMENT.

141. DEFENDANT BACON CALLED OFFICER MARTIN, OFFICER MARTIN CONFIRMED THAT PLAINTIFF HAD AN "EYE" PROBLEM, AND WAS SCHEDULED TO SEE THE EYE DOCTOR LATER THAT SAME DAY.

142. DEFENDANT BACON WROTE PLAINTIFF A DISCIPLINARY REPORT FOR REFUSING HOUSING IN SPITE OF WHAT WAS TOLD TO HER.

143. PLAINTIFF FILED AN INFORMAL GRIEVANCE FOLLOWING THE D.R. TO COUNSELOR COOK - DEFENDANT, ON 12-26-2012.

144. PLAINTIFF NEVER RECEIVED A RESPONSE TO THE AFOREMENTIONED GRIEVANCE NEITHER AN APPEAL OR GRIEVANCE FORM.

145. ON JANUARY 30, 2013, PLAINTIFF SUBMITTED A SICK-CALL REGARDING THE NEED TO BE SEEN BY THE EYE DOCTOR, REPLACEMENT CONTACT, AND THE FOLLOW-UP TREATMENT.

146. THAT SAME DAY PLAINTIFF RECEIVED A RESPONSE VIA INSTITUTIONAL MAIL STATING THAT HE WAS REFERRED TO THE OPTHAMOLOGIST BY NURSE SMITH.

147. IN FEBRUARY 2013 PLAINTIFF WAS FINALLY TRANSFERRED TO D BUILDING A MEDICAL BUILDING WHERE HE COULD BE PROVIDED A SAFE ENVIRONMENT.

148. ON MARCH 15, 2013 PLAINTIFF FILED A INFORMAL GRIEVANCE REGARDING HIM BEING CALLED OUT AND SENT TO GEORGIA STATE PRISON IN REIDSVILLE AND WAS TOLD HOURS LATER AFTER SITTING IN A BULL PEN, THAT HE COULD NOT GO.

149. PLAINTIFF INQUIRED AS TO WHY HE WAS BEING RETURNED WITHOUT BEING SEEN, HE WAS TOLD BY THE TRANSFERING GUARDS THAT THERE WAS NO-ONE TO PICK HIM UP TO TAKE HIM TO THE EYE DOCTOR.

150. ON MARCH 19, 2013 PLAINTIFF WAS FINALLY SEEN BY HIS EYE DOCTOR IN DUBLIN, GEORGIA WHERE HE WAS INFORMED ABOUT HIS CORNEA TRANSPLANT AND REITERATED THE NEED FOR A CONTACT IN HIS LEFT EYE TO PREVENT DEGENERATION

151. SOMETIME IN MARCH FOLLOWING PLAINTIFFS VISIT TO DR. WILLIAMS PLAINTIFF RECEIVED A VERBAL RESPONSE FOR HIS GRIEVANCE FROM COUNSELOR COOK.

152. COUNSELOR COOK TOLD PLAINTIFF THAT HIS GRIEVANCE WAS RESOLVED BECAUSE HE HAD BEEN SEEN, PLAINTIFF ASKED FOR AN FORMAL OR APPEAL FORM COUNSELER COOK SAID PLAINTIFF COULD NOT GRIEVE FURTHER.

153. ON APRIL 15, 2013 PLAINTIFF FILED A CONFIDENTIAL GRIEVANCE REGARDING HIS DETERIORATING VISION IN HIS LEFT EYE, HIS NEED FOR THE CONTACT TO PREVENT ANY FURTHER DEGENERATION AND PROGRESSION OF THE DISEASE AND THAT HE RECEIVED NO RESPONSE TO HIS CONTINUED REQUEST FOR CONTACT.

154. PLAINTIFF NEVER RECEIVED A RESPONSE TO SAID GRIEVANCE.

155. ON MAY 15, 2013, PLAINTIFF RECEIVED HIS CORNEAL TRANSPLANT TO HIS RIGHT EYE WHERE HE WAS GIVEN SPECIFIC INSTRUCTIONS TO REMAIN IN A NON-VIOLENT ENVIRONMENT, TO PREVENT ANY EYE TRAUMA THAT COULD CAUSE LOSS OF VISION. PLAINTIFF WAS ALSO GIVEN MULTIPLE EYE DROPS WITH A SPECIFIC ROUTINE THAT HE WOULD NEED TO FOLLOW TO PROMOTE HEALING AND PREVENT THE LOSS OF VISION.

156. DR. WILLIAMS, EMPHASIZED THAT THESE EYE DROPS WERE HIS LIFE LINE AND HE WOULD NEED TO USE THEM HIS WHOLE LIFE OR HE WOULD

OR COULD GO BLIND.

157. ON OR ABOUT MAY 30 2012, PLAINTIFF WAS TRANSFERED FROM SMITH STATE PRISON TO WARE STATE PRISON.

158. UPON ARRIVAL AT WARE STATE PRISON PLAINTIFFS PROPERTY WAS INVENTORIED BY DEFENDANT CERT TEAM OFFICER ROBINSON -IN-FRONT OF SEVERAL INMATES.

159. DEFENDANT ROBINSON INQUIRED ABOUT THE EYE DROPS THAT THE PLAINTIFF HAD WITH HIM. PLAINTIFF EXPLAINED THAT HE HAD JUST RECEIVED A CORNEAL TRANSPLANT AND THAT IT WAS IMPERATIVE THAT HE FOLLOW A ROUTINE OF EYE DROPS, TO MAINTAIN HIS EYE SIGHT AND TO REFER TO HIS RECORD.

160. DEFENDANT ROBINSON THREW PLAINTIFFS EYE DROPS IN THE GARCAGE AND SAID HE COULD GET MORE AT MEDICAL.

161. PLAINTIFF EXPLAINED HIS CONCERN THAT MEDICAL WOULD NOT CARRY THE SPECIFIC EYE DROPS HE NEEDED AND THAT IT WAS IMPERATIVE THAT HE MAINTAIN THE EYE DROP ROUTINE AT SUCH A CRITICAL JUNCTURE IN HIS HEALING PROCESS. HIS WAS IGNORED. OFFICER DEFENDANT ROBINSON STATED "WELCOME TO WAYCROSS". "MICHEAL JACKSON" IN REFERENCE TO THE EYE DARK SHADES I HAD DUE TO ME HAVING SURGERY.

162. DEFENDANT ROBINSON TOLD PLAINTIFF TO PICK UP HIS PROPERTY AND CARRY IT. PLAINTIFF PROPERTY WEIGHED AT LEAST 75 TO 100 POUNDS DUE TO A GREAT AMOUNT OF LEGAL WORK. PLAINTIFF STATED PER DR. ORDERS HE WAS TO DO NO LIFTING OR STRAINING FOR 6-8 WEEKS DUE TO THE FRAGILITY OF HIS IMPLANT.

163. DEFENDANT ROBINSON TOLD PLAINTIFF THAT HIM PICKING UP SOMETHING HEAVY HAD NOTHING TO DO WITH HIS EYES AND TO CARRY HIS PROPERTY OR IT WOULD BE THROWN AWAY. THIS WAS WITNESSED BY SEVERAL INMATES.

164. PLAINTIFF TOLD MR. ROBINSON - DEFENDANT THAT HE ALSO NEEDED TO BE IN A NON-VIOLENT ENVIRONMENT AS TO NOT JEOPARDIZE HIS IMPLANT.

165. DEFENDANT ROBINSON TOLD PLAINTIFF THAT HE HAD NOTHING TO DO WITH HOUSING ASSIGNMENT AND HE WOULD GO WHERE HE IS TOLD.

166. PLAINTIFF WAS TO BE PLACED IN F. BUILDING A DANGEROUS GANG ENVIRONMENT AT WARE STATE. AT THIS POINT PLAINTIFF REQUESTED TO BE PLACED IN THE HOLE -LOCK-UP- ALL THIS OCCURRED IN FRONT OF SEVERAL INMATES. OFFICER ROBINSON INQUIRED "TO THE OTHER INMATES" WHO ELSE IS SCARED"?

167. PLAINTIFF WAS PLACED IN A OUTSIDE RECREATION CAGE IN THE SUMMER HEAT WITHOUT FOOD OR WATER FOR SEVERAL HOURS.

168. PLAINTIFF INFORMED THE GUARDS WHO WORKED THE LOCK-DOWN UNIT OFFICER HONICUT THAT HE WOULD NEED A PRIVATE CELL TO MAINTAIN A SAFE ENVIRONMENT. PLAINTIFF WAS TOLD BY OFFICER ROBINSON HE WOULD REMAIN OUTSIDE IN A CAGE UNTIL HE DECIDED TO HAVE A ROOM-MATE.

169. AFTER EIGHT HOURS OUTSIDE IN THE HEAT EXHAUSTED WITH-OUT WATER NOR FOOD PLAINTIFF FINALLY GAVE IN AND SAID HE WOULD MOVE TO A ROOM WITH AN INMATE WHOM NAME WAS AHMAD DAVIS. -A GANG MEMBER NOTE: < PLAINTIFF HAD AN EYE TRANSPLANT TWO WEEKS PRIOR >.

170. ON JUNE 6, 2013, PLAINTIFF FILED A GRIEVANCE IN REGARDS TO DEFENDANT ROBINSON THROWING AWAY HIS EYE DROPS, AND THAT HE DID NOT RECEIVE ANY REPLACEMENT EYE DROPS, AND THAT HE WAS FORCED TO CARRY HIS PROPERTY WHICH IS AGAINST DOCTORS ORDERS I.E. WHICH WAS EXTREMELY HEAVY.

171. EARLY JUNE 2013, PLAINTIFF ALSO WROTE THE HEALTH CARE ADMINISTRATOR AT WARE STATE PRISON STATING HE HAD JUST HAD AN CORNEA TRANSPLANT, AND THAT HE NEEDED HIS EYE DROPS, AND THAT HIS EYES BEGIN TO DRAIN PURULENT YELLOW EXUDATE.

172. IN JUNE 2013, PLAINTIFF ALSO WROTE DEPUTY WARDEN JOHNSON REGARDING BEING PLACED IN HOUSING WITH ANOTHER INMATE IN LOCK-UP AND THAT HE NEEDED TO BE PLACED IN A PRIVATE CELL TO PROVIDE A SAFE ENVIRONMENT FOR HIS EYE SAFETY, I.E. (ONE MAN CELL.)

173. DAYS LATER DEFENDANT WAS TAKEN TO SEE DR. WILLIAMS. DR. WILLIAMS WAS VERY DISTRAUGHT THAT PLAINTIFF HAD NOT RECEIVED HIS EYE DROPS AND THAT HE WAS NOT PLACED IN A SAFE ENVIRONMENT AND STATED THAT PLAINTIFF WAS NOT HEALING PROPERLY, THAT THERE IS STILL ALOT OF STIGMATISM, AND THERE HAD BEEN STRAIN ON THE SUTURES. DR. WILLIAMS EMPHASIZED TO THE GUARDS, THAT IT WAS IMPERATIVE THAT PLAINTIFF RECEIVE HIS EYE DROPS AND THAT HE BE PLACED IN A HANDICAPPED ENVIRONMENT. DR. WILLIAMS STATED THAT HE WOULD DOCUMENT THESE NEEDS.

174. IN SEGREGATION PLAINTIFF RECEIVED A DISCIPLINARY REPORT FOR REFUSING HOUSING. THE DR. REPORT WAS EXPUNGED DUE TO HIS MEDICAL CONDITION. THE DR LIEUTENANT BLACK MALE LAST NAME START WITH A STATED THAT HE DO NOT KNOW WHY A D.R WAS WRITTEN ON PLAINTIFF AND SAID PLAINTIFF SHOULD NOT BE WHERE HE IS HOUSED AND TO TRANSFER PLAINTIFF TO I-BUILDING.

175. PLAINTIFF FINALLY RECEIVED HIS EYE-DROPS IN MID JUNE.

176. JUNE 15, 2013 PLAINTIFF WAS TRANSFERRED TO I BUILDING.

177. FOLLOWING TRANSFER TO I BUILDING PLAINTIFF RECEIVED A RESPONSE TO HIS GRIEVANCE, DENYING HIS CLAIMS STATING THAT HE WAS ARGUING TWO ISSUES ON ONE GRIEVANCE.

178. PLAINTIFF APPEALED THE GRIEVANCE STATING THAT IT WAS A PROBLEM WITH ONE GUARD AT ONE TIME ADDRESSING ONE CONDITION HIS EYE

179. ON JULY 13, 2013, PLAINTIFF FILED A SICK-CALL COMPLAINING

THAT HIS EYE WAS SEVERLY IRRITATED AND THAT IT WAS PART THE
PRESCRIBED TIME FOR HIS SUTURE REMOVAL WHICH SHOULD HAD BEEN
FOUR WEEKS AFTER HIS OPERATION.

178. SEVERAL DAYS FOLLOWING THE SICK-CALL PLAINTIFF WAS SEEN BY
DR. WILLIAMS, DR. WILLIAMS REMOVED SEVERAL SUTURES AND STILL REITE
RATED THAT HE WAS NOT PLEASED WITH THE HEALING. PLAINTIFF ONCE
AGAIN INQUIRED ABOUT HIS NEED FOR A CONTACT. DR. WILLIAMS STATED THAT
HE DID ALL HE COULD DO TO ENSURE PLAINTIFF RECEIVED THE CONTACT AND
THAT HE WAS SORRY.

180. ON AUGUST 2013, PLAINTIFF FILLED OUT ANOTHER SICK-CALL FORM
IN SUBMITTED IT COMPLAINING OF HIS CONTINUED CHEST PAIN AND HIS
NEED FOR A CONTACT LENS FOR HIS LEFT EYE.

180. ON AUGUST 26, 2013, PLAINTIFF WAS CALLED OUT TO MEDICAL AND
SEEN BY DEPENDANT NURSE INITIALS M.B, NAME UNKNOWN, SICK-CALL N-
URSE.

181. DEPENDANT NURSE INITIALS M.B. JANE DOE #2 TOLD PLAINTIFF THAT
THERE WAS NOTHING THEY COULD DO ABOUT THE CONTACTS LENSES, TH
AT THERE WAS NO EYE DOCTOR AT THIS PRISON (WAYCROSS) NURSE
JANE DOE #2 INITIALS M.B. NEVER PHYSICALLY EXAMINED PLAINTIFF
CHEST WOUND. DEPENDANT M.B. STATED THAT PLAINTIFF TO SIGN
A REFUSAL TO NOT BE CHARGED A FIVE DOLLAR FEE.

182. ON OCTOBER 21, 2013 PLAINTIFF SUBMITTED ANOTHER SICK-CALL
COMPLAINING OF HIS CONTINUED NEED FOR A CONTACT LENS AND THAT
HIS VISION IS CONTINUING TO DETERIORATE, THIS WAS AGAIN REITERA
TED WITH ADDITIONAL SICK-CALLS. IE ON NOVEMBER 5, 2013, AND NO
VEMBER 17th 2013, ALL WITHOUT A RESPONSE.

184. ON NOVEMBER 26, 2013, PLAINTIFF WAS INFORMED THAT HE REFUSED
THE EYE DOCTOR - UNAWARE TO PLAINTIFF.

Case 5:14-cv-00081-WCL-MSH Document 1 Filed 07/31/14 Page 25 of 37

185. ON DECEMBER 2, 2013, PLAINTIFF FILED ANOTHER MEDICAL REQUEST REGARDING HIS CONTINUED CHEST PAIN AND IMPERATIVE NEED OF A CONTACT LENS FOR HIS LEFT EYE.

186. ON DECEMBER 6, 2013, PLAINTIFF WAS SEEN BY NURSE JANE DOE #2 NAME UNKNOWN, INITIALS L.B. AS PREVIOUSLY DESCRIBED ALONG WITH THOSE ENUMERATIONS THE NURSE DEFENDANT JANE DOE #2, TOLD PLAINTIFF THAT SHE WAS AN RN NOT A EYE DOCTOR, BUT SHE WAS QUITE SURE THE SUTURES THAT WAS BURNING IN PLAINTIFFS EYE WAS ABSORBABLE AND NOT TO WORRY ABOUT IT AND SIGNED TO REFUSE TREATMENT SO PLAINTIFF WOULD NOT BE CHARGED THE FIVE DOLLAR CO-PAY FEE.

187. PLAINTIFF STATED TO DEFENDANT JANE DOE #2 NAME UNKNOWN, HE IS NOT REFUSING TREATMENT. THE NURSE THAN TOLD PLAINTIFF TO SIGN THE SPOT IN SHE WOULD SEE TO IT THAT HE WAS SCHEDULED TO SEE HIS DOCTOR. PLAINTIFF DID, BUT DID NOT RECEIVE ANY FURTHER CARE.

188. PLAINTIFF WAS SAW AGAIN BY DEFENDANT JANE DOE #2 UPON COMPLETION OF ANOTHER SICK-CALL HE SUBMITTED IN THE MIDDLE OF MONTH DECEMBER 2013, WHICH THE DEFENDANT NURSE JANE DOE #2, ADVISE PLAINTIFF TO DO THE SAME PROCEDURE MENTIONED IN LINE 186. PLAINTIFF THAN SIGNED DONT AGREE OR DO NOT AGREE ON THE LINE WERE HIS SIGNATURE WAS TO BE.

189. PLAINTIFF SUBMITTED TWO GRIEVANCES 12-30-13, ONE FOR THE CONTINUED DENIAL OF HIS CHEST PAIN TREATMENT, SECOND FOR HIS EYE SUTURES HURTING, AND MEDICAL DENYING HIM TREATMENT, FOR HIS EYE CONTACT.

## CONTINUED DENIAL OF MEDICAL CARE

• ON INFORMATION AND BELIEF TRAUMA CAN CAUSE KERATOCONUS AND PERMANENT IMPAIRMENT OF VISION.

• ON INFORMATION AND BELIEF PAINFUL KELOIDS CAN BE TREATED MULTIPLE WAYS TO PREVENT PAIN AND SUFFERING ALONG WITH EMBARRASSMENT FROM DISFIGUREMENT.

• ON INFORMATION AND BELIEF, DENIAL OF EYE DROPS FOLLOWING A CORNEAL TRANSPLANT PREVENTS THE FORMATION OF EPITHELIAL CELLS THAT ARE CRITICAL TO THE PERMANENT ATTACHMENT OF THE TRANSPLANT AND WILL PERMANENTLY STOP THE HEALING PROCESS AND CAUSE RE-OCCURRENCE OF THE SCARRING.

• PLAINTIFF AS OF TODAY HAS NOT RECEIVED ANY RECENT FOLLOW-UP CARE REGARDING HIM TESTING POSITIVE FOR HEPATITIS. FOLLOWING HIS ATTACK.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES
## DENIAL OF DUE-PROCESS

188. PLAINTIFF FILED A GRIEVANCE MARCH 1, 2012, REGARDING HIS ASSAULT AND NAMING DEFENDANTS, JOHN DOE #2 CONTROL TOWER NAME UNKNOWN, WARDEN MCLAUGHLIN, DEPUTY WARDEN HINTON, DEPUTY WARDEN MOODY AND CAPTAIN DAVIS DESCRIBING DELIBERATE INDIFFERENCE, AND GIVEN TO COUNSELOR DEFENDANT JOHN HILL.

189. PLAINTIFF NEVER RECEIVED A RESPONSE FROM SAID GRIEVANCE.

190. ON APRIL 4, 2012, PLAINTIFF REQUESTED AN APPEAL FORM FROM COUNSELOR HILL DEFENDANT, BECAUSE HE HAD NEVER RECEIVED A RESPONSE FROM HIS GRIEVANCE. COUNSELOR HILL STATED TO PLAINTIFF HE WOULD BE RIGHT BACK, AND NEVER RETURNED.

191. ON OCTOBER 22, 2013 PLAINTIFF FILED ANOTHER GRIEVANCE REGARDING THE LACK OF RESPONSE TO HIS GRIEVANCE AND NOT BEING PROVIDED AN APPEAL FORM NOR AN FORMAL GRIEVANCE FORM.

192. WARDEN MCLAUGHLIN RESPONDED TO THE OCTOBER 22ND GRIEVANCE ON NOVEMBER 20, 2013, AND WAS RECEIVED BY PLAINTIFF ON DECEMBER 4, 2013, WARDEN MCLAUGHLIN ADDRESSED A DIFFERENT GRIEVANCE AND FAILED TO ADDRESS THE GRIEVANCE DATED MARCH 1, 2012.

193. ON 12-5-2013, PLAINTIFF FILED AN APPEAL STATING THAT HE WAS ADDRESSING THE WRONG GRIEVANCE.

194. ON 3-6-2012, AN INFORMAL GRIEVANCE WAS SUBMITTED TO COUNSELOR BOSTIC ADDING FLOOR OFFICER JOHN DOE #1 BLACK MALE UNKNOWN, TO HIS CLAIM OF DELIBERATE INDIFFERENCE.

195. ON 3-12-2012, DEFENDANT BOSTIC RETURNED THE 3-6-2012, GRIEVANCE WITH A REJECTION RESPONSE STATING THAT THE GRIEVANCE WAS REJECTED DUE TO ATTACHMENT, SO IT WOULD NOT BE ACCEPTED. PLAINTIFF EXPLAINED THAT THERE WAS NOT SUFFICIENT ROOM ON THE GRIEVANCE FORM TO PROPERLY EXPLAIN WHAT OCCURRED. PLAINTIFF ASKED FOR AN FORMAL GRIEVANCE FORM OR AN APPEAL FORM. COUNSELOR BOSTIC TOLD PLAINTIFF THAT HE COULD NOT FILE A FORMAL GRIEVANCE AND THAT THE MATTER IS NOT APPEALABLE. CONTRARY TO THE SOP, AND MACON STATE RULE BOOK. ALSO THERE IS NO REMEDY AVAILABLE FOR APPEAL REJECTION, OTHER THAN FILING AN FORMAL OR APPEAL.

196. ON 3-13-2012, PLAINTIFF ATTEMPTED TO SUBMIT ANOTHER INFORMAL GRIEVANCE REGARDING ADDING JOHN DOE #1. COUNSELOR BOSTIC REFUSED TO ACCEPT IT AND STATED ANY GRIEVANCE DEALING WITH THE ASSAULT ISSUE HE IS NOT ACCEPTING AT THIS TIME.

197. ON 3-14-2012, INMATE ERIC HAYNES AN ORDERLY IN THE SEGREGATION UNIT ATTEMPTED TO GIVE COUNSELOR BOSTIC. THE INFORMAL GRIEVANCE THAT PLAINTIFF HAD WRITTEN COUNSELOR BOSTIC TOLD I/N HAYNES THAT HE ALREADY INFORMED PLAINTIFF THAT HE WOULD NOT ACCEPT ANY GRIEVANCE REGARDING HIS ASSAULT AND FOR I/N HAYNES TO STAY AWAY FROM PLAINTIFFS CELL-DOOR.

198. "UPON INFORMATION AND BELIEF" A SIGN WAS POSTED OUTSIDE PLAINTIFFS DOOR WITH HIS PICTURE, FULL NAME, AND GDC NUMBER. THIS WAS DONE FOR ADMINISTRATIVE DIFFICULTS TO NOT STOP AT I/N DOOR. THIS SIGN WAS PUT ON PLAINTIFF DOOR BY DEFENDANT RAWLS. PLAINTIFF WAS THE ONLY INMATE WITH THIS TYPE OF SIGN OUTSIDE HIS CELL DOOR IN THE ENTIRE CELL-BLOCK. FURTHER INFORMATION RELATED TO PLAINTIFF THAT THIS SIGN MEANT, THAT COUNSELORS, AND ADMINISTRATIVE STAFF AT MACON STATE PRISON WAS TO STAY AWAY FROM PLAINTIFF CELL-DOOR.

199. ON 4-12-2012, INMATE JAMES MARING AN ORDERLY WHO WORKED IN SEGREGATION AT MACON STATE PRISON PLAINTIFF ENTIRE 9 MONTHS IN VI CELL #108, GAVE THE PLAINTIFF SAID SIGN.

200. ON MAY 2012, PLAINTIFF FILED AN INFORMAL GRIEVANCE REGARDING COUNSELORS NOT MAKING WEEKLY VISITS AS REQUIRED TO COUNSELOR HILL

201. PLAINTIFF RECEIVED NO RESPONSE FROM MAY 2012, GRIEVANCE AND WAS REFUSED ON APPEAL FORM.

202. ON JULY 2012, PLAINTIFF SUBMITTED ANOTHER GRIEVANCE AGAIN REGARDING THE DELIBERATE INDIFFERENCE ON JOHN DOE #1.

203. THE JULY 2012, GRIEVANCE WAS DENIED BEING OUT OF TIME. PLAINTIFF EXPLAINED TO THE COUNSELOR THAT HE WOULD NOT ACCEPT HIS GRIEVANCES, NEITHER STOP BY HIS CELL-DOOR FOR WEEKS.

204. THERE ARE SEVERAL CONFLICTS BETWEEN THE GEORGIA DEPARTMENT OF CORRECTIONS STANDARD OPERATIONS PROCEDURES (S.O.P.), AND THE GEORGIA DEPARTMENT OF CORRECTIONS INMATE HANDBOOK.

205. THE S.O.P. STATES THAT THE GRIEVANCE FORMS MUST BE AVAILABLE IN THE CONTROL ROOMS OF ALL LIVING UNITS AND MUST BE PROVIDED UPON REQUEST.

206. THE INMATE HANDBOOK STATES THAT GRIEVANCE FORMS ARE AVAILABLE UPON REQUEST THROUGH A COUNSELOR FOLLOWING AN INFORMAL PROCESS. CONTRARY TO S.O.P.

207. THE S.O.P. STATES THAT AN OFFENDER IS NOT REQUIRED TO ATTEMPT AN INFORMAL RESOLUTION BEFORE FILING AN GRIEVANCE (FORMAL).

208. THE INMATE HANDBOOK STATES THAT THE INFORMAL PROCESS MUST BE COMPLETED BEFORE PROCEEDING TO A FORMAL GRIEVANCE CONTRARY TO S.O.P.

209. THE S.O.P. DOES NOT DESCRIBE HOW TO OBTAIN AN APPEAL FORM.

210. THE MACON STATE HANDBOOK STATES THAT APPEAL FORMS ARE AVAILABLE IN THE CONTROL BOOTH OF ALL LIVING UNITS BUT CANNOT BE FOUND

211. ALL GRIEVANCE FORMS EXCEPT INFORMAL GRIEVANCE FORMS ARE GIVEN OUT AT COUNSELLORS DISCRETION. WHEN THE APPEAL FORM IS GIVING OUT AT MACON STATE PRISON, WITH THE GRIEVANCE NUMBER WROTE WITH INK BY THE COUNSELLORS, SO YOU CAN NOT FILE AN APPEAL FOR ANOTHER GRIEVANCE, THEREBY PREVENTING THE I/N FROM APPEALING ANY OTHER GRIEVANCE. INMATE WAS LOCKED BEHIND A CELL UNABLE TO SEE COUNSELORS.

## CLAIMS FOR RELIEF

212. THE ACTIONS OF DEFENDANT JOHN DOE #2 NAME UNKNOWN TO PLAINTIFF, IN OPENING PLAINTIFFS CELL DOOR WITH MULTIPLE INMATES CONGREGATING OUTSIDE PLAINTIFFS DOOR WITHOUT THE FLOOR OFFICER ON POST, NOR THE REQUEST OF OCCUPANTS OF THE CELL (TWO INMATES). DEMONSTRATED MALICIOUS BEHAVIOR AND CONSTITUTED CRUEL AND UNUSUAL PUNISHMENT, IN VIOLATION OF THE EIGHTH AMENDMENT OF THE CONSTITUTION OF THE UNITED STATES, AND RECKLESS DISREGARD STANDARD VIOLATION.

213. THE FAILURE OF DEFENDANT JOHN DOE #1 TO SUPERVISE THE MOVEMENTS WITHIN THE CELL BLOCK I.E. (leaving His Post) RESULTED IN MULTIPLE INMATES TO ENTER PLAINTIFF CELL, ASSAULTING PLAINTIFF AND PROCREATING UNSAFE ENVIRONMENT WITH DELIBERATE INDIFFERENCE TO THE SAFETY OF THE INMATES, FOR LEAVING INMATES UNSUPERVISED, IN VIOLATION OF THE EIGHTH AMENDMENT OF THE U.S. CONSTITUTION.

214. THE FAILURE OF DEFENDANT JOHN DOE # 1 TO RESPOND TO PLAINTIFFS SCREAMS FOR HELP OR TO INTERVENE WHEN PLAINTIFF WAS STAGGERING OUT OF HIS CELL COVERED WITH BLOOD DEMONSTRATED WANTON DISREGARD FOR LIFE AND LIMB AND DELIBERATE INDIFFERENCE IN VIOLATION OF THE 8th AMENDMENT OF THE CONSTITUTION OF THE U.S.

215. THE FAILURE OF DEFENDANTS EADDIE, HINTON, DAVIS, BOBBIT, OWENS, AND MCLAUGHLIN, TO TAKE REASONABLE MEASURES TO GUARANTEE PRISONERS' SAFETY BY KNOWING OF SERIES RISK AND HARM DUE TO: THE READY AVAILABILITY OF KNIVES AND OTHER WEAPONRY AT MACON STATE PRISON THAT WERE CREATED FROM FLIMSY LOCKER BOXES, MULTIPLE INMATE/INMATE ASSAULTS WITH KNIVES i.e (60 OR MORE) SINCE MY STAY AT MACON, ALLOWING VIOLENCE AND TERROR TO REIGN AT MACON STATE PRISON. THE FLIMSY LOCKER BOXES WERE REPLACED RESUPPLYING WEAPONRY AT MACON PRISON, MAINTAINING AND UNDERSTAFFED ENVIRONMENT THAT RESULTED IN SHADDY SECURITY, GIVING OUT RAZORS WITHOUT REQUESTING A RETURN, FAILURE TO ROUTINELY MONITER CAMERAS TO VERIFY GUARD ROUNDING. ALLOWING INMATES TO DICTATE TO THE GUARDS THE AMOUNT OF SECURITY THEY SHOULD MAINTAIN IN REGARDS TO -TURNING A BLIND-EYE, OPENING DOORS FOR ANYONE, NOT BEING PRESENT/OR DISREGARDING SECURITY MEASURES ALL TOGETHER, THROUGH BRIBERY AND INTIMIDATION. THESE FACTORS ALONE AND/OR IN COMBINATION PROVIDED A DANGEROUS ENVIRONMENT, WITH WANTON DISREGARD FOR PRISONERS SAFETY THROUGH DELIBERATE INDIFFERENCE IN VIOLATION OF THE EIGHTH AMENDMENT, AND LEAD TO THE ASSAULT OF PLAINTIFF, ALL THE AFOREMENTIONED VIOLATIONS AT MACON STATE PRISON.

216. THE FAILURE OF DEFENDANT GEORGIA HEALTH SCIENCE UNIVERSITY, SPIKES, NASH, FYE, WORTHY, COOPER, JANE DOE #1, JANE DOE #2, AND HARRIS/HARRISON, TO FOLLOW DOCTORS ORDERS, PROVIDE FOLLOWING EXAMINATION AND TREATMENT OF HIS MULTIPLE WOUNDS. AND CONTINOUS PAIN CONSTITUTES DELIBERATE INDIFFERENCE TO PLAINTIFFS SERIOUS MEDICAL NEEDS IN VIOLATION OF THE 8TH AMENDMENT OF THE U.S. CONSTITUTION.

217. THE FAILURE OF DEFENDANTS SPIKE, FYE, MOODY, NASH, WORTHY, COOPER, JANE DOE #1, JANE DOE #2, HARRISON/HARRIS, TO TREAT HIS CHEST WOUNDS PROPERLY RESULTING IN ADDITIONAL PAIN AND SUFFERING CONSTITUTES DELIBERATE INDIFFERENCE TO PLAINTIFFS SERIOUS MEDICAL NEEDS IN VIOLATION OF THE 8TH AMENDMENT. P. 26 of 32

218. THE FAILURE OF DEFENDANTS, SPIKES, MOODY, MEDICAL ADMINISTRATION AT MACON STATE PRISON, MEDICAL ADMINISTRATOR AT SMITH STATE PRISON NAME UNKNOWN, MEDICAL ADMINISTRATOR WARE STATE PRISON NAME UNKNOWN, EYE DOCTOR JOHN DOE #3 NAME UNKNOWN, TO RESPOND AND TREAT PLAINTIFF EYE CONDITION AND TRANSPLANT PROPERLY, CONSTITUTED DELIBERATE INDIFFERENCE TO PLAINTIFFS SERIOUS MEDICAL NEEDS IN VIOLATION OF THE U.S. CONSTITUTION 8TH AMENDMENT.

219. THE ACTION OF DEFENDANT CERT TEAM OFFICER ROBINSON IN THROWING AWAY PLAINTIFFS EYE DROPS IN DISREGARD OF PLAINTIFF PLEAS AND DOCTORS ORDERS RESULTING IN SERIOUS HARM AND JEOPARDIZING PLAINTIFFS PLEAS AND DOCTORS ORDERS RESULTING IN SERIOUS MEDICAL NEED., IN VIOLATION OF THE 8TH AMENDMENT OF THE U.S. CONSTITUTION.

220. THE ACTIONS OF MCLAUGHLIN, HINTON, RAWLS, BOSTIC IN ADVISING AND BEING AWARE OF LT. RAWLS PLACING A SIGN OUTSIDE PLAINTIFFS DOOR WHILE IN PROTECTED CUSTODY THAT INDICATED TO ALL THAT THIS PLAINTIFF SHOULD NOT BE ALLOWED THE GRIEVING PROCESS FOR WEEKS, DENIED PLAINTIFFS DUE PROCESS OF LAW AND FREE SPEECH IN VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENT OF THE UNITED STATES.

221. THE FAILURE OF DEFENDANTS, MCLAUGHLIN, MOODY, HINTON, BOSTIC, COOK IN PROVIDING ADEQUATE DISPOSITION OF GRIEVANCES AND DISCIPLINARY REPORTS DENIED THE PLAINTIFF FREE RIGHT TO GRIEVE, AND DUE PROCESS OF LAW IN VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENT OF THE UNITED STATES.

222. LASTLY ENUMERATED FACT: IN JANUARY OR FEBRUARY 2013, PLAINTIFF WAS IN THE HOLE / SEGREGATION UNIT J. BUILDING SMITH STATE PRISON.

223. PLAINTIFF ASKED COUNSELOR COOK IN FRONT OF SEVERAL INMATES, COULD HE SUBMIT A INFORMAL GRIEVANCE DEALING WITH MACON STATE NOT ALLOWING HIS GRIEVANCE TO BE ANSWERED. COUNSELOR COOK SAID

It was to late to submit another grievance and as long as im at another prison. I cant grieve another prison. Inmate was in cell 124 J. Building.

## RELIEF REQUESTED

Wherefore Plaintiff request that the court grant the following relief:

A. Issue a declaratory judgement stating that:

1. The action of defendant John Doe #2 in opening plaintiffs cell door to allow 6-8 inmates to assault the plaintiff constituted a violation of rights under the Eighth Amendment and an assault and battery aiding-and-abetting, under State law.

2. The action of defendant John Doe #1 abandoning his post and leaving inmates unsupervised resulting in the assault of plaintiff constituted a violation of the Eigth Amendment and an assault and battery under State law.

3. Defendants, McLaughlin, Moody, Hinton, Davis, Bobitt, failure to take action to curb phisical abuse and provide a safe environment violated the plaintiffs rights under the Eighth Amendment of the United States Constitution 8th Amendment.

4. Defendants Rawls, Bostic, Hill actions by advising Lt. Rawls to place a sign outside plaintiffs cell door that prevented adequate grieving process violated plaintiffs rights under due process clause of the Fourteenth Amendment of the United States.

5. Defendants Hill, Bostic, Hinton, and Moody's failure to provide an adequate grieving process violated plaintiffs rights under due-process clause of the Fourteenth Amendment of the U.S. Constitution.

P. 28 of 32

6. DEPENDANT CROK ACTION DENYING PLAINTIFF THE RIGHT TO SUBMIT A GRIEVANCE, AND REFUSING TO GIVE PLAINTIFF, FORMAL GRIEVANCE, APPEAL FORM DENIED PLAINTIFF OF HIS RIGHT TO GRIEVE PROPERLY, IN VIOLATION OF THE FOURTEENTH AND FIRST AMENDMENT OF THE U.S. CONSTITUTION.

7. DEPENDANTS, FYE, WORTHY, NASH, HARRISON, COOPER, JANE DOE #1, JANE DOE #2, SPIKES, MEDICAL ADMINISTRATOR AT SMITH STATE PRISON - NAME UNKNOWN, MEDICAL ADMINISTRATOR WARE STATE PRISON NAME UNKNOWN ACTIONS BY FAILING TO PROVIDE ADEQUATE MEDICAL CARE IN REGARD TO HIS MULTIPLE WOUNDS VIOLATED AND CONTINUE TO VIOLATE THE PLAINTIFFS RIGHTS UNDER THE EIGHTH AMENDMENT OF THE UNITED STATES CONSTITUTION.

8. DEPENDANTS, MACON STATE EYE DOCTOR JOHN DOE #3 NAME UNKNOWN, HIS CONTRATOR, MEDICAL ADMINSTRATOR, AT WARE STATE PRISON NAME UNKNOWN, SMITH STATE PRISON MEDICAL ADMINISTRATOR NAME UNKNOWN, SPIKES, ROBINSON CERT TEAM OFFICER, SICK CALL NURSE JANE DOE #3 AT WARE STATE PRISON ACTION IN FAILING TO PROVIDE ADEQUATE MEDICAL CARE AND TREATMENT OF PLAINTIFFS CORNEAL TRANSPLANT, AND CONTINUE DEGENERATION OF HIS KERATOCONUS, VIOLATED AND CONTINUE TO VIOLATE, THE PLAINTIFFS RIGHTS UNDER THE EIGHTH AMENDMENT OF THE UNITED STATES CONSTITUTION.

B. ISSUE AN INJUNCTION ORDERING DEPENDANTS MCLAUGHLIN, AND COMMISSIONER OWENS OR THEIR AGENTS TO:

1. IMPLEMENT A METHOD FOR TRACKING GUARD ROUNDING
2. IMPLEMENT A BETTER METHOD TO ENSURE COUNSELORS SEE ALL INMATES ROUTINELY THAT ARE LOCKED IN SEGREGATION.

3. IMMEDIATELY TRANSFER PLAINTIFF TO A MEDICAL FACILITY THAT SPECIALIZES IN THE CARE AND TREATMENT OF EYE DISORDERS.

4. IMPLEMENT A CHECK-OUT AND RETURN POLICY FOR RAZORS, OR IF THERE IS ONE-ENFORCE IT.

5. IMPLEMENT A BETTER SYSTEM FOR MEDICAL CALL-OUTS TO ENSURE INMATES ARE SEEN AND ADEQUATE MEDICAL IS PROVIDED.

6. IMPLEMENT A BETTER SYSTEM OR METHOD FOR MONITORING AND TRACKING THE GRIEVING PROCESS AND MAINTAINING A CONGRUENT POLICY BETWEEN THE S.O.P. AND THE INMATE HANDBOOK.

C. ISSUE AN INJUNCTION ORDERING DEFENDANTS OWENS, WARDEN JOHNSON THEIR AGENTS TO:

1. IMMEDIATELY ARRANGE FOR THE CARE AND TREATMENT OF PLAINTIFFS MULTIPLE KELOID WOUNDS BY A QUALIFIED PHYSICIAN.

2. IMMEDIATELY PROVIDE PLAINTIFF WITH HIS PRESCRIBED CONTACT LENS FOR HIS LEFT EYE TO SEE, AND TO SLOW THE DEGENERATING PROCESS.

3. IMMEDIATELY TRANSFER PLAINTIFF TO A MEDICAL FACILITY THAT SPECIALIZES IN THE CARE AND TREATMENT OF EYE DISORDERS.

4. IMMEDIATELY ARRANGE FOR PLAINTIFF TO BE SEEN BY AN EYE SPECIALIST ROUTINELY AS PRESCRIBED.

5. CARRY-OUT WITHOUT DELAY THE TREATMENT DIRECTED BY SUCH MEDICAL PRACTITIONER.

6. IMMEDIATELY ARRANGE FOR CARE AND TREATMENT OF PLAINTIFFS HEPATITIS.

D. ISSUE INJUNCTION ORDERING DEFENDANTS OWENS OR HIS AGENTS: TO:

1. NOT SEGREGATE PLAINTIFF FROM GENERAL POPULATION AS A RETALITORY RESOLUTION OR MEASURE.

P. 30 of 32

E. AWARD COMPENSATORY DAMAGES IN THE FOLLOWING AMOUNTS:

1. $3 MILLION-DOLLARS JOINTLY AND SEVERALLY AGAINST DEFENDANTS JOHN DOE #1, JOHN DOE #2, MCLAUGHLIN, HINTON, DAVIS, EADDIE, AND UNIT MANAGER BOBITT FOR THE PHYSICAL AND EMOTIONAL INJURIES SUSTAINED TO PLAINTIFFS EYES AS A RESULT OF THE PLAINTIFFS BEATING AND STABBING.

2. $500.000 - DOLLARS (THOUSANDS), JOINTLY AND SEVERALLY AGAINST DEFENDANTS, JOHN DOE #1, JOHN DOE #2, MCLAUGHLIN, HINTON, DAVIS, EADDIE, AND UNIT MANAGER BOBITT FOR THE PHYSICAL AND EMOTIONAL INJURIES FROM STAB WOUNDS SUSTAINED AS A RESULT OF THE PLAINTIFFS BEATING.

3. $3 MILLION JOINTLY AND SEVERALLY AGAINST DEFENDANTS JOHN DOE #3 EYE DOCTOR NAME UNKNOWN, MEDICAL ADMINISTRATOR STAFF AT MASON, SMITH, AND WARE STATE PRISON NAMES UNKNOWN, AND THE MEDICAL CONTRACTORS NAMES UNKNOWN TO PLAINTIFF CERT TEAM OFC. ROBINSON, JANE DOE #1, JANE DOE #2, FOR PHYSICAL AND EMOTIONAL INJURIES RESULTING FROM THEIR FAILURE TO PROVIDE MEDICAL CARE TO PLAINTIFFS EYE CONDITION.

4. $500.000 THOUSAND, JOINTLY AND SEVERALLY AGAINST DEFENDANTS, NOOTHY, NASH, HARRIS/HARRISON, FYE, JANE DOE #1, JANE DOE #2, PA COOPER, FOR PHYSICAL AND EMOTIONAL INJURIES RESULTING FROM THEIR FAILURE TO PROVIDE ADEQUATE MEDICAL CARE AND TREATMENT TO PLAINTIFFS STAB WOUNDS AND SUBSEQUENT KELOIDS THAT WERE FORMED.

5. $500.000 THOUSAND JOINTLY AND SEVERALLY AGAINST DEFENDANTS JOHN DOE #1, JOHN DOE #2, MCLAUGHLIN, HINTON, DAVIS, EADDIE, AND UNIT MANAGER BOBBIT, FOR THE PHYSICAL AND EMOTIONAL INJURIES.

SUSTAINED TO PLAINTIFF CONTRACTING HEPATITIS AS A RESULT OF PLAINTIFFS BEATING AND STABBING.

6. $500,000 THOUSAND JOINTLY AND SEVERALLY AGAINST DEFENDANTS WORTHY, NASH, HARRIS / HARRISON, FYE, JANE DOE #1, JANE DOE #2, AND COOPER, FOR PHYSICAL AND EMOTIONAL INJURIES RESULTING FROM THEIR FAILURE TO PROVIDE ADEQUATE MEDICAL CARE AND TREATMENT OF PLAINTIFFS HEPATITIS.

7. $100,000 THOUSAND JOINTLY AND SEVERALLY AGAINST DEFENDANT DR. FYE, FOR REFUSING TO TREAT PLAINTIFF INGROWN TOENAIL.

8. $500,000 THOUSAND JOINTLY AND SEVERALLY AGAINST DEFENDANTS LT. RAWLS, BOSTIC, HILL, HINTON, MCLAUGHLIN, MOODY. FOR THE PUNISHMENT, SEGREGATION, DISCRIMINATION, INCLUDING DEPRIVATION OF LIBERTY AND AMENITY, AND EMOTIONAL INJURY RESULTING FROM DENIAL OF DUE PROCESS IN CONNECTION WITH PLAINTIFFS GRIEVING PROCESS.

AWARD PUNITIVE DAMAGES IN THE FOLLOWING AMOUNT:

1. $100,000 THOUSAND EACH AGAINST DEFENDANTS JOHN DOE #1, JOHN DOE #2, MCLAUGHLIN, HINTON, EDDIE, BOBBIT, DAVIS.

2. $100,000 EACH AGAINST DEFENDANTS MEDICAL ADMINISTRATORS NAMES AND CONTRACTORS UNKNOWN (SMITH, WARE, MACON STATE PRISONS), COOPER, NASH, FYE, SICK-CALL NURSE JANE DOE #1 R.N. NAME UNKNOWN INITIALS L.B. LUCY FIRST NAME, AT WARE STATE PRISON, WORTHY, EYE DOCTOR JOHN DOE #3 NAME AND CONTRACTOR UNKNOWN (MACON, SMITH STATE PRISON SAME DOCTOR).

3. $200,000 THOUSAND AGAINST DEFENDANT CERT/OFC. ROBINSON AT WARE STATE PRISON.

Respectfully Submitted
This 1ST day of Feb 2014
William H. Powell #89674
3620 Harris Rd
WAYCROSS GA 31503

P. 32 of 32